UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICK CHARLES HANNON,

    Petitioner,

-vs-                                                    Case No.  8:06-cv-2200-T-24TBM

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.

_____

## ORDER DENYING APPLICATION FOR CERTIFICATE OF APPEALABILITY

This cause is before the Court on Petitioner Hannon's application for certificate of appealability. (Doc. No. 31).

## Background

Petitioner Hannon is a Florida prisoner under sentence of death.  On October 23, 2007, the Court denied Hannon's 28 U.S.C. § 2254 petition for writ of habeas corpus and declined to issue a certificate of appealability. (Doc. No. 25)  Judgment was entered on October 24, 2007.  On November 5, 2007,  Hannon filed a motion to alter the judgment (Doc. No. 27), which this Court denied on November 21, 2007. (Doc. No. 29).

On December 19, 2007,  Hannon filed a Notice of Appeal (Doc. No. 30) and the present application for certificate of appealability. (Doc. No. 31).

Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), in order to obtain a COA, a habeas petitioner must make "a *substantial* showing of the denial of a *constitutional* right." See 28 U.S.C. § 2253(c)(2). As the Supreme Court has explained, to make this "substantial showing," a petitioner must prove "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were '"adequate to deserve encouragement to proceed further,"'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). In other words, to warrant issuance of a COA, this habeas petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong."

Moreover, in order to be entitled to a COA in cases where habeas relief was denied on procedural grounds, the habeas petitioner:

> . . . must show not only that one or more of the claims he has raised presents a substantial constitutional issue, but also that there is a substantial issue about the correctness of the procedural ground on which the petition was denied. *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed. 2d 542 (2000); *Gonzalez v. Sec'y for Dep't of Corr.*, 366 F.3d 1253, 1265 (11th Cir. 2004) (*en banc*), aff'd on other grounds sub nom. *Gonzalez v. Crosby*, 545 U.S. 524, 125 S.Ct. 2641, 162 L. Ed. 2d 480 (2005). A "substantial question" about the procedural ruling means that the correctness of it under the law as it now stands is debatable among jurists of reason. *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604 ("When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."); *Jackson v. Crosby*, 437 F.3d 1290, 1295 (11th Cir. 2006)(per curiam), *cert. denied*, ___ U.S. ___ , 127 S. Ct. 240, 166 L. Ed. 2d 189 (2006); *Lawrence v. Florida*, 421 F.3d 1221, 1225 (11th Cir. 2005), aff'd, 127 S. Ct. 1079, 2007 WL 505972 (U.S. 2007). If the petitioner's contention about the procedural ruling against him is foreclosed by a binding decision -- one from the

> Supreme Court or this Court that is on point -- the attempted appeal does not present a substantial question, because reasonable jurists will follow controlling law. *See Lawrence*, 421 F.3d at 1225 ("The district court should not have issued a COA on the statute of limitations issue because binding circuit precedent clearly disposed of the issue.").

*Gordon v. Sec'y, Dep't of Corr.*, 479 F.3d 1299, 1300 (11th Cir. 2007).

## Discussion

For the following reasons, Hannon has failed to satisfy the foregoing standards in his application for certificate of appealability.

At pages 3 - 6 of his application, Hannon criticizes this Court's Order of October 23, 2007 (Doc. 25) which denied habeas relief and also denied a COA, stating:

> **CERTIFICATE OF APPEALABILITY AND**
> **LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**
>
> IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282, 124 S. Ct. 2562, 159 L. Ed. 2d 384 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). Petitioner has not made the requisite showing in these circumstances.
>
> Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

*Hannon v. Dep't of Corr.*, 2007 WL 3119632 at * 56-57 (M.D. Fla., Oct. 23, 2007).

At pages 3-6 of his application, Hannon claims an alleged due process violation and asserts that he has been denied an opportunity to be heard because the Court declined to issue

a certificate of appealability in the order denying his federal habeas corpus petition. Hannon's claim is meritless. First, Hannon's application for COA does not dispute the governing caselaw correctly applied by this Court in denying COA. Second, Hannon's present application essentially repeats his prior habeas claims; and Hannon has not raised any materially new arguments in his application that this Court had not considered in previously reviewing Hannon's habeas petition, memorandum, and reply. Third, Hannon's current application for certificate of appealability renders his underlying due process complaint, based on an alleged lack of opportunity to be heard, moot and meritless. Furthermore, Hannon has another opportunity to be heard inasmuch as he may renew his request for a COA in the Eleventh Circuit. See, Fed. R. App. P. 22(b)(1); *Hunter v. United States*, 101 F.3d 1565, 1575 (11th Cir. 1996) (*en banc*) ("Under the plain language of the rule, an applicant for the writ gets two bites at the appeal certificate apple: one before the district judge, and if that one is unsuccessful, he gets a second one before a circuit judge."), *abrogated on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997).

At page 7 of his application, Hannon "submits that a COA should issue as to all of the claims asserted in his Petitioner for Writ of Habeas Corpus. No claims or argument not specifically addressed are waived or abandoned." Hannon's is not entitled to a certificate of appealability based on his sweeping attempt to unilaterally preserve some unidentified claims, which may or may not have been raised before, and to expand his request for COA to some additional unspecified claims. *See, Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1302-03 (11th Cir. 2005) (limiting review to the issues specified in the COA), *cert. denied*, 127 S. Ct. 348 (2006); *See also, Hodges v. AG,* 506 F.3d 1337 (11th Cir. 2007) (noting, "There would be no point in having a COA order specify issues if it does not limit those that may be briefed, and a

limitation that may be ignored by a disappointed appellant is no limitation at all.")

To warrant issuance of a COA, Petitioner must show "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." *Slack*, 529 U.S. at 484. Pursuant to AEDPA, this Court found that the state proceedings did not involve decisions that were "contrary to, or an unreasonable application of, clearly established law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This Court also determined that the state courts' decisions were not "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). For the following reasons, Hannon has not shown that reasonable jurists would find this Court's resolution of his individual claims debatable or wrong.

At pages 7 - 8 of his application, Hannon renews his IAC/penalty phase claim and he again relies, primarily, on the *dissenting* opinion of Florida Supreme Court. Hannon's continuing reliance on the dissent is misplaced. In denying Hannon's IAC/penalty phase claim, this Court fully addressed the Florida Supreme Court's detailed majority opinion, which distinguished the dissent. In reviewing the state court's adjudication of Hannon's IAC/penalty phase claim under AEDPA, this Court ultimately concluded, in pertinent part:

> The Florida courts meticulously evaluated each of Hannon's IAC/penalty phase claims under *Strickland*, and the Florida Supreme Court's dispositive factual findings are fully supported by the record. Hannon was represented by an experienced criminal trial attorney who pursued a consistent theme at trial - emphasizing Hannon's admirable character throughout this case - and, thereby, introducing mitigation on Hannon's behalf during both the guilt phase and penalty phase. Evidence presented during the guilt phase undeniably may be considered in mitigation. *See Bell v. Cone*, 535 U.S. 685, 700, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002).
>
> Hannon himself did not provide trial counsel with the information now urged as mitigating. Furthermore, trial counsel spoke to many of the same family members who testified at the post-conviction evidentiary hearing. Trial counsel

Joe Episcopo confirmed, at the evidentiary hearing, that it was a strategic decision not to present anything in the penalty phase that would detract from their consistent theory - that Hannon was not guilty and that, because of his character, he was not capable of committing the atrocities in this case: nearly beheading Brandon Snider and then chasing Robbie Carter and shooting him repeatedly at point-blank range.

As the Florida Supreme Court found, trial counsel's investigation and presentation of mitigating evidence was within the realm of constitutionally adequate assistance of counsel. Trial counsel conducted a reasonable investigation, presented appropriate guilt and penalty phase evidence, and emphatically urged the jury to recommend sparing Hannon's life. The Supreme Court has never held that counsel must present all available mitigating evidence in the penalty phase of a capital trial in order to perform reasonably. In *Wiggins*, the attorney had not investigated sufficiently to make a reasonable decision about what evidence to present. In *Williams*, the Virginia state court had applied an incorrect standard in assessing the petitioner's ineffectiveness claim; the Court did not hold that counsel is constitutionally deficient for deciding against the presentation of mitigation on tactical grounds. *See also, Rutherford v. Crosby,* 385 F.3d 1300, 1315 (11th Cir. 2004) (rejecting ineffectiveness based on failure to present mitigating evidence, and distinguishing *Wiggins,* noting that the new mitigation in *Wiggins* was not counterproductive or inconsistent with the other mitigation offered while Rutherford's mitigation "would have come with a price"). In *Rompilla*, the Supreme Court stressed that it was not creating a per se rule requiring defense counsel to "do a complete review of the file on any prior conviction." None of these cases interpret the Sixth Amendment as foreclosing counsel's ability to make reasonable strategic decisions limiting the presentation of mitigating evidence. To the contrary, case law has consistently recognized that an attorney has an obligation to make an appropriate decision about what evidence to present or not present. *See Housel v. Head,* 238 F.3d 1289, 1296 (11th Cir. 2001) (noting reasonableness of counsel's decision against focusing on intoxication and substance abuse in mitigation).

Hannon has not shown that his trial counsel was ineffective in his performance at the penalty phase of Hannon's trial. On the facts of this case, as carefully outlined by the Florida Supreme Court, Hannon has failed to demonstrate that the state courts acted unreasonably in rejecting Hannon's claim that counsel's performance was deficient at the penalty phase.

Moreover, even where a petitioner arguably demonstrates that his counsel's performance at sentencing was deficient, he must also show that he was prejudiced by his counsel's deficient performance. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland,* 466 U.S. at 693. Rather, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would

have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at 695; *see Henyard v. McDonough*, 459 F.3d 1217, 1242 (11th Cir. 2006). In this double homicide case, there are three powerful aggravators as to each victim, and a fourth aggravator applicable to victim Robbie Carter. Hannon has not and cannot meet the standard required to prove that his attorney was ineffective when the facts that support these substantial aggravating factors are compared to the fairly unremarkable mitigation now argued by habeas counsel.

Hannon has not shown that if trial counsel had introduced, at the penalty phase, all of the mental health evidence advocated at the postconviction evidentiary hearing, the outcome of the penalty phase would have been different. In short, Hannon has not shown that he was prejudiced by trial counsel's representation at the penalty phase. Because Hannon has not satisfied either of the *Strickland* prongs, Hannon is not entitled to relief on Ground One.

*Hannon v. Dep't of Corr.*, 2007 WL 3119632 at * 19-20 (M.D. Fla., Oct. 23, 2007).

At page 9 of his application, Hannon accuses this Court of ignoring alleged similarities between *Wiggins v. Smith*, 539 U.S. 510 (2003) and Hannon's case. Hannon's allegation is unfounded. Both the Florida Supreme Court and this Court addressed and distinguished Hannon's case from *Wiggins*. This Court cited to the to the Florida Supreme Court's decision as follows:

> Neither the United States Supreme Court's decision in *Wiggins v. Smith*, 539 U.S. 510, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003), nor its recent decision in *Rompilla v. Beard*, 545 U.S. 374, 125 S. Ct. 2456, 162 L. Ed. 2d 360 (2005), compels a different conclusion. In *Wiggins*, the Court concluded that defense counsel's performance fell below an objective standard of reasonableness where counsel abandoned their investigation into mitigation even though their limited investigation revealed information that would have led a "reasonably competent attorney to investigate further." 539 U.S. at 527. The Supreme Court noted that defense counsel's investigation included a review of reports which noted that Wiggins had spent most of his life in foster care and had displayed emotional difficulties while there and that Wiggins' mother was a chronic alcoholic who on at least one occasion left her children alone for days without food. *See id.* at 523, 525. The Supreme Court concluded that a reasonable attorney would have realized the need to pursue these leads further, but defense counsel abandoned the investigation at this juncture. *See id.* at 527. [n.15] The Supreme Court determined that counsel's failure to investigate further into Wiggins' background resulted from inattention rather than reasoned strategic judgment, in part because

during opening statements, counsel informed the jurors, "You're going to hear that [Wiggins] has had a difficult life," but then failed to provide the jury with any details of Wiggins' life history. *See id.* at 526. In holding that counsel's performance was deficient, the Supreme Court nonetheless noted that "*Strickland* does not require counsel to investigate every conceivable line of mitigating evidence no matter how unlikely the effort would be to assist the defendant at sentencing," *id.* at 533, and distinguished Wiggins' case from others where the High Court had concluded that limited investigations into mitigation were reasonable. *See id.* at 535. n.15 The Supreme Court noted in part that further inquiry likely would have revealed repeated incidents of sexual abuse suffered by Wiggins that could have been offered in mitigation. *See id.* at 525.

\* \* \*

A careful reading of the Supreme Court's decisions in *Wiggins* and *Rompilla* reveals that those decisions are inapplicable to the facts of the instant matter. Unlike Wiggins, in the instant case there were no reports containing evidence of Hannon's life history which should have prompted trial counsel to conduct a deeper investigation into Hannon's background. In fact, trial counsel testified that during the criminal proceedings neither Hannon, his father, his mother, nor his sister Moreen ever mentioned that Hannon might suffer from some form of brain injury, that Hannon was abused or neglected, or that he had a traumatic childhood or a substantial drug problem. According to counsel, when asked if Hannon had been born with any problems, Hannon's parents stated that they had "no problem with him." Moreover, unlike *Rompilla*, there is no indication here that the State planned to rely on particular material in aggravation that was not obtained and reviewed by trial counsel prior to the penalty phase trial. Finally, and most distinguishing, unlike the defendants in *Wiggins* and *Rompilla,* Hannon adamantly expressed his wish to proceed consistent with the innocence defense during the penalty phase. The dissent's assertion that we have "ignore[d] the mandate for defense counsel's duty to investigate," dissenting op. at 92, does not accommodate these critical facts. Consistent with his client's wishes, trial counsel sought to demonstrate that Hannon did not have the type of character to commit the murders rather than offering evidence on Hannon's drug use, his mental fitness, or his family history. Therefore, unlike defense counsel's deficient performances in *Wiggins* and *Rompilla*, trial counsel's limited investigation into mitigation under the specific facts of the instant case, which was based on the express wishes of Hannon, was within the level of reasonable performance that is required by *Strickland* and *Wiggins*.

*Hannon*, 2007 WL 3119632 (M.D. Fla., Oct. 23, 2007)(quoting *Hannon,* 941 So. 2d at 1124 -

1138).

Also at page 9 of his application, Hannon relies on a Sixth Circuit case, *Williams v.*

8

*Anderson*, 460 F.3d 789 (6th Cir. 2006). Hannon's reliance on a circuit court case is misplaced because Petitioner Hannon must establish, and he has not, that the Florida state court's decision is contrary to United States Supreme Court precedent. Moreover, in *Williams v. Anderson*, defense counsel failed to conduct any investigation into mitigating evidence, failed to contact Williams' family members, and failed to discuss the mitigation phase with Williams prior to trial. Thus, the Sixth Circuit held that "[d]efense counsel's *complete failure to investigate* before deciding not to present mitigating evidence is deficient performance as a matter of law under *Strickland*." *Williams,* 460 F.3d at 802. The Sixth Circuit also found that defense counsel's complete failure to investigate and present any mitigation evidence -- of Williams' growing up in a violent environment, drug dependency, parental neglect, childhood abuse,  and to present testimony from a mental health expert and Williams' family and friends which could have humanized Williams -- was prejudicial,  because a reasonable probability existed that, but for counsel's error, one juror would have voted against death. In *Williams,* the Court noted that in Ohio, a sentence of death may only be imposed by the *unanimous* vote of a jury. In Ohio, "a solitary juror may prevent a death penalty recommendation." *State v. Robb*, 723 N.E.2d 1019, 1044 (Ohio 2000)(citing *State v. Brooks*, 661 N.E.2d 1030, 1042 (Ohio 1996)). And, "[i]f a jury cannot agree on a verdict of life or death, no retrial is necessary. The judge simply imposes a life sentence. *Id.*(citing *State v. Springer*, 586 N.E.2d 96 (Ohio 1992)). Unlike Ohio, under Florida law, the jury's death recommendation is advisory and need not be unanimous, but may be based on a simple majority vote, *i.e.*, 7 to 5. *See, Coday v. State*, 946 So. 2d 988, 1006 (Fla. 2006). Furthermore, in Hannon's case, a brutal double homicide, the jury's death recommendations were unanimous, 12-0.

In Hannon's case, the state trial court found the following aggravating circumstances

9

applicable to both murders: (1) previous conviction of a violent felony (the contemporaneous killings); (2) the murders were committed during the commission of a burglary; and (3) the murders were heinous, atrocious, or cruel. § 921.141 (5)(a), (d), and (h), Fla. Stat. (1991). As to Carter (the second victim), the state trial court found the additional aggravating factor that the murder was committed to avoid or prevent a lawful arrest. § 921.141 (5)(e), Fla. Stat. (1991). In mitigation, the state trial court considered testimony from Hannon's mother and father that Hannon was not a violent person. Also, the state trial court considered the fact that Hannon's original co-defendant, Richardson, was no longer facing the death penalty. The state trial court found that the aggravating factors outweighed the mitigating factors and followed the jury's unanimous recommendation, imposing separate death sentences on Hannon for the murders of Snider and Carter. *See, Hannon v. State*, 638 So. 2d 39, 41 (Fla. 1994). Accordingly, Hannon's reliance on the Sixth Circuit's readily distinguishable decision in *Williams* is misplaced.

At pages 10 - 12 of his application, Hannon renews his IAC/guilt phase claim, relying entirely on the Florida Supreme Court dissent. The Florida Supreme Court majority opinion specifically addressed this dissent and found that the dissent lacked merit. In denying federal habeas relief, this Court confirmed its review of the record and the state court's decision and evaluated Hannon's claims under AEDPA. Petitioner Hannon has not established that the Florida state court decision is contrary to United States Supreme Court precedent, and because reasonable jurists would not find this Court's assessment of the constitutional claim debatable or wrong, Hannon is not entitled to a certificate of appealability on this issue.

At pages 12 - 14 of his application, Hannon renews his alleged *Brady/Giglio* claim,[1] based on his allegation that co-defendant Ron Richardson served no time in prison and that Hannon did not receive an evidentiary hearing in state court. The failure to grant a post-conviction evidentiary hearing in state court does not rise to the level of a federal constitutional claim and is not subject to federal habeas review.

Ron Richardson was arrested on the murder charges in March 1991, and he testified at Hannon's jury trial in July 1991. The following year, on May 15, 1992, Richardson entered a guilty plea to the charge of accessory after the fact. On May 15, 1992, Richardson was sentenced to a five-year prison term and he was credited with the time spent while incarcerated awaiting trial. In summarily denying postconviction relief on Hannon's Brady/Giglio complaint, the state trial court found that the details of Richardson's plea agreement were known at the time of Hannon's trial and were presented to the jury.

As to any assertion that Richardson's "deal" was not accurately reflected,[2] the fact that Richardson could get out of prison before serving five years because he might earn gain time was brought to the jury's attention by defense counsel's cross-examination at trial. (App. D6/1098, citing R1214). As the state trial court explained,

> Furthermore, on May 15, 1992, Mr. Richardson was sentenced to five (5) years prison for his participation in the crime. (See Judgment and Sentence, attached). The fact that Mr. Richardson did not serve five years in Florida State Prison due to gain time awarded by the Department of Corrections does not

---

[1] *Brady v. Maryland,* 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

[2] In his present application for certificate of appealability, Hannon argues that the defense counsel and the jury did not know that Richardson would be released early based on a suspended sentence. Hannon argues, in his application, that "this is an entirely different agreement than that which was disclosed to trial counsel and testified to at trial." This argument is spurious, as Richardson did spend fourteen months in prison based on his charge being reduced to a single count of accessory after the fact. *Acker v. State*, 787 So. 2d 77, 78-79 (Fla. 2d DCA 2001).

> prove that the State suppressed evidence or presented false testimony. The award and forfeiture of statutory gain time is a function of the Department of Corrections, not the Court. *See Harvey v. State*, 616 So. 2d 521 (Fla. 2d DCA 1993). Therefore, Defendant has failed to prove either a *Brady* violation or a *Giglio* violation in that Defendant has failed to prove that the testimony was suppressed or that the State presented false testimony. As such, no relief is warranted upon this portion of claim III.

(App. D 6/1095-1099).

In denying habeas relief on Hannon's *Brady/Giglio* claims, based on Richardson's testimony and sentence, this Court ruled, in pertinent part:

> Hannon's claim fails because he has not alleged any facts to show that there was either a *Brady* or a *Giglio* violation with regard to Richardson's testimony. The fact that Richardson did not serve five years in Florida State Prison due to gain time awarded by the Department of Corrections does not prove that the State suppressed evidence or presented false testimony. The award and forfeiture of statutory gain time is a function of the Department of Corrections, not the Court. *See Harvey v. State*, 616 So. 2d 521 (Fla. 2d DCA 1993).
>
> There is no indication that the State suppressed evidence relating to its agreement with Richardson. The record reveals that Richardson approached the State to negotiate an agreement, the State came to an agreement with Richardson on a Sunday evening, and the next morning the State informed Hannon's trial counsel and the state trial court of the plea agreement. The record facially reflects that Hannon's trial counsel knew of the agreement at the time of the trial. These facts conclusively refute the contention that a *Brady* violation occurred. *See Tompkins v. State*, 872 So. 2d 230, 239 (Fla. 2003) ("Because defense counsel knew of the report . . . a *Brady* violation is conclusively refuted."); *see also Foster v. State*, 810 So. 2d 910, 916 (Fla. 2002); *Bryan v. State*, 748 So. 2d 1003, 1008 (Fla. 1999)."
>
> Hannon also fails to demonstrate a *Giglio* violation with regard to Richardson's testimony relating to what occurred on the night of the murders. Hannon simply asserts that Richardson's testimony was fabricated without additional facts, or any facts that the State knew Richardson's testimony was false. Hannon has not provided a factual basis to demonstrate that the State instructed Richardson to lie with regard to what occurred on the night of the murders, or that Richardson did lie.
>
> There is no basis for a finding that the state courts either ignored or unreasonably applied prevailing federal law in the rejection of Hannon's

12

> *Brady/Giglio* claims. Moreover, Hannon has not rebutted, by clear and convincing evidence, the state court's dispositive factual finding that "the record facially supports the conclusion" that the jury was in fact informed that with his gain time, Richardson might not actually spend five years in prison. In this case, Hannon failed to show that the State suppressed "any evidence that Richardson might not serve time in jail after his gain time was calculated or that it misrepresented to the jury the length of time Richardson was expected to actually serve for his participation in the murders." *Hannon*, 941 So. 2d at 1140-1141. Hannon has not demonstrated that the Florida courts either ignored or unreasonably applied prevailing federal law in the rejection of Hannon's *Brady/Giglio* claims.

*Hannon*, 2007 WL 3119632 at *31-32 (M.D. Fla. Oct. 23, 2007).

Hannon's perfunctory claim is insufficient to make "a *substantial* showing of the denial of a *constitutional* right." Reasonable jurists would not find this Court's assessment of the constitutional claim debatable or wrong and Hannon is not entitled to a certificate of appealability on this issue.

At pages 14 - 15 of his application, Hannon renews his *Brady/Giglio* claim relating to Judith Bunker and, once again, Hannon relies on the Florida Supreme Court dissent. In denying Hannon's habeas claim, this Court ultimately concluded that even if Hannon arguably had demonstrated any error, it was harmless. This Court stated:

> The state trial court found that Ms. Bunker's exaggeration of her credentials was not prejudicial when her testimony was based on her extensive experience in the field of blood spatter analysis. Trial counsel confirmed that her testimony was not harmful to Hannon, and his "tactical decision not to challenge or impeach Bunker's blood spatter testimony was reasonable because it [her testimony] did not implicate Hannon in the murders, nor was it even an element in the State's case against Hannon." *Hannon,* 941 So. 2d at 1122. If there were any error caused by withholding evidence of Bunker's credentials or presenting "false testimony" as to her credentials, the error was harmless under *Brecht*. No violation of any clearly established federal law has been demonstrated, and this claim fails under AEDPA.

*Hannon*, 2007 WL 3119632 at *33 (M.D. Fla. Oct. 23, 2007).

Under *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007), federal habeas relief must be denied

13

if the alleged constitutional error was harmless under the *Brecht v. Abrahamson*, 507 U.S. 619 (1993) standard of "substantial and injurious effect." *See Fry*, 127 S. Ct. at 2328. Hannon does not dispute this Court's harmless error determination under *Brecht.* Since Petitioner Hannon does not even attempt to demonstrate or suggest that "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong" he is not entitled to a certificate of appealability on this issue.

At pages 15 - 16 of his application, Hannon argues that to "the extent that Claims IV, V and VII were found by this Court to be procedurally barred," Hannon "submits that these claims are worthy of further review on appeal." Hannon's perfunctory claim is inadequate to demonstrate or suggest that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See, Gordon, supra*.

Finally, at page 16 of his application, Hannon offers a "shotgun" of renewed claims, summarily concluding that these claims are "debatable" and worthy of review.  Since Hannon does not demonstrate or suggest that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," he is not entitled to a certificate of appealability on these claims.

Final Comments

Hannon has not shown that reasonable jurists would find debatable both (1) the merits of any of his underlying claims, and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 475 (2000).

Accordingly, the Court orders:

14

That Hannon's application for certificate of appealability (Doc. No. 31) is denied.

ORDERED at Tampa, Florida, on January 3, 2008.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Counsel of Record